IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

REBECCA K. NELSON,

       Plaintiff,

v.                                          CASE NO. 2:12-cv-0008

MICHAEL J. ASTRUE[1],
Commissioner of Social Security,

       Defendant.

## MEMORANDUM OPINION

This is an action seeking review of the final decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  Presently pending before the Court are Plaintiff's Brief in Support of Judgment (ECF No. 13) and Defendant's Brief in Support of Defendant's Decision (ECF No. 14).  Both parties have consented in writing to a decision by the United States Magistrate Judge.

Claimant, Rebecca K. Nelson, filed applications for DIB and SSI on February 6, 2008, alleging disability as of February 19, 2002, due to chronic obstructive pulmonary disease (COPD)/emphysema, degenerative disc disease, osteoarthritis, anxiety and depression and borderline intellectual functioning.  The claim was denied initially on July 3, 2008, and upon reconsideration on December 5, 2008.  On December 19, 2008, Claimant requested a hearing before an Administrative Law Judge (ALJ).  The hearing was held on October 21, 2009, before

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  Under Fed. R. Civ. P. 25(d)(1) and 2 U.S.C. § 405(g), Carolyn W. Colvin is automatically substituted as the defendant in this action.

ALJ James S. Quinlivan in Huntington, West Virginia (Tr. at 115-126). A supplemental hearing was held on May 21, 2010, where additional information was received into the evidence of record.  The additional information contained the following[2]:

- Medical Records covering the period from 5/6/01 to 3/17/05 from Lincoln Primary Care Center;
- Medical Report dated 9/27/01 from Cabell Huntington Hospital;
- Labs from Lincoln Primary Care Center;
- Psychological Evaluation dated 11/11/09 by Kristen Blanks, M.A.;
- Treatment notes covering the period from 9/11/002 to 06/08/2007 by Anita T. Dawson, M.D.;
- Case worksheet dated 10/29/09 through 12/15/09;
- Case Worksheet dated 2/25/10 through 4/1/10;
- Psychological Evaluation dated 3/3/10 by Kelly Robinson, M. A.; and
- Medical Report dated 9/11/09 from West Virginia Health & Human Resources.

By decision dated July 15, 2010, the ALJ determined that Claimant was not entitled to benefits. The ALJ's decision became the final decision of the Commissioner on November 3, 2011, when the Appeals Council considered additional evidence[3] offered by the Claimant but determined it did not provide a basis for changing the ALJ's decision (Tr. at 7-9).  Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

---

[2] See List of Exhibits Received Subsequent to Hearing (Tr. at 5).
[3] On November 3, 2011, the Appeals Council received additional evidence. A Brief of contentions from Maria Goldcamp, Esq. dated September 13, 2010, was made part of the record as Exhibit AC-1.  The additional evidence consisting of medical records from Saint Mary's Medical Center dated November 2010, was made part of the record as Exhibit AC-2 (Tr. at 10).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id*. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id*. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id*. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id*. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id*. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id*. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date (Tr. at 117). Under the second inquiry, the ALJ found that Claimant suffers from the severe

impairments of chronic obstructive pulmonary disease (COPD)/emphysema, degenerative disc disease, osteoarthritis, anxiety and depression. (*Id*.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. at 118).  The ALJ then found that Claimant has a residual functional capacity (RFC) for light work, reduced by nonexertional limitations[4] (Tr. at 120).  As a result, Claimant cannot return to her past relevant work (Tr. at 25).  Nevertheless, the ALJ concluded that Claimant could perform light exertional jobs such as product inspector, product weigher and product sorter which exist in significant numbers in the national economy (Tr. at 125).  On this basis, benefits were denied (Tr. at 126).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their

---

[4] Claimant can lift or carry up to 20 pounds occasionally.  She can lift or carry up to 10 pounds frequently.   She should not engage in sustained or frequent overhead work.  She should not climb ladders or work at unprotected heights.  She can only occasionally climb stairs, steps or ramps.  She can only occasionally bend, stoop, crouch, squat, kneel or crawl.  She can only occasionally operate foot or pedal controlled equipment.  She should not be exposed to excessive air pollutants, pulmonary irritants or allergens.  She should not be exposed to temperature extremes or work in damp humid conditions (Tr. at 120).

duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record, which includes medical records, reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on March 2, 1964. She repeated the 9th grade but did not obtain a high school education (Tr. at 368).  Claimant did not take special education classes. (*Id.*)  Claimant asserted she had work experience as a self-employed caregiver for the elderly from 1995-2001. As a caregiver, Clamant used medical equipment as instructed by Hospice including administering shots and taking blood pressure.  Claimant previously worked as motel cleaning staff.  Claimant also worked in the deli at a grocery store.  Her work responsibilities included operating a meat slicer.

The Medical Record

The Court has reviewed all evidence of record including the medical records and will discuss it further below.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not based on substantial evidence and the ALJ failed to find that Claimant's physical and mental impairments in combination equal a Listed Impairment. (ECF No. 13). The Commissioner argues that substantial evidence supports the ALJ's decision and that the ALJ correctly found Claimant's credibility to be fair to poor (ECF No. 14).

Borderline Intellectual Functioning

The ALJ did not find that Claimant suffered from a severe impairment of borderline intellectual functioning. In a Psychological Evaluation performed by Kristen M. Blanks, M. A. and Robert G. Martin, Psychologist, of Martin and Associates on May 23, 2005, Claimant's Full Scale IQ score was 63 (Tr. at 317). The Psychological Evaluation in 2005 was performed as a tool to determine Claimant's eligibility for Medicaid benefits (Tr. at 314). Mr. Martin and Ms. Blanks noted that Claimant drove herself to the Psychological Evaluation (Tr. at 313). Claimant stated that she was experiencing "empty nest" after her adult sons had moved out of her home. Claimant reported that it takes her three to four days to clean her home. Although Claimant reported that she prefers to stay at home, she stated that she goes to the grocery store several times a month. In the Psychological Evaluation, Claimant was found to have no impairment in social functioning. Her immediate, recent and remote memories were within normal limits. Her concentration and attention were mildly deficient. It was also noted that "it is questionable as to whether or not she gave her best effort on this subtest" (Tr. at 317). As to the validity of the IQ test, the Psychological Evaluation states that Claimant's scores are not consistent and that "her scores are considered to be an invalid underestimate of her current functioning. Her scores are not consistent with her education" (Tr. at 318). Claimant reported that her household chores include cooking meals, driving, doing laundry and handling the family finances. Her husband receives SSI and Claimant is her husband's payee.

COPD/Emphysema

Penny O. Perdue, M.A., with Associates in Psychology and Therapy, Inc., conducted a Mental Status Examination of Claimant on September 26, 2007 (Tr. at 367). At the

examination, Claimant's chief complaints were that she suffered from "back and breathing problems and [her] hands hurt" since approximately 1998. (*Id.*)   Dr. Perdue reported on Claimant's Mental Status Examination that Claimant was diagnosed with asthma in 2000. (*Id.*) Dr. Perdue additionally reported that Claimant was diagnosed with COPD/emphysema[5] in 2006.[6] (*Id.*)   Throughout Claimant's medical reports and treatment notes entered into evidence, Claimant reported to smoking from ½ a pack of cigarettes to three packs a day.

Evaluating Mental Impairments

The five-step sequential evaluation process applies to the evaluation of both physical and mental impairments.  20 C.F.R. § 416.920a (a) (2012); 20 C.F.R. § 404.1520a (a) (2012). In addition, when evaluating the severity of mental impairments, the Social Security Administration implements a "special technique," outlined at 20 C.F.R. §§ 404.1520a and 416.920a. *Id.*  First, symptoms, signs and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1) (2012). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his decision the symptoms, signs and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e) (2012).  Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2) (2006).  Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2012).  The first three areas are rated

---

[5] Chronic obstructive pulmonary disease (COPD) refers to a group of lung diseases that block airflow and make breathing difficult.  Emphysema is a common condition that makes up COPD.  Emphysema occurs when the air sacs (alveoli) at the end of the smallest air packages (bronchioles) in the lungs are gradually destroyed.  The main cause of COPD is tobacco smoking. (www.mayoclinic.com.  Last visited September 30, 2013).
[6] Claimant filed applications for DIB and SSI on February 6, 2008, alleging disability as of February 19, 2002. Claimant was diagnosed with COPD/Emphysema in November 206, after her alleged disability onset date of February 19, 2002 (Tr. at 367).

on a five-point scale: None, mild, moderate, marked and extreme.  The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4)(2012).  A rating of "none" or "mild" in the first three areas and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2012).  Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2012).  Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity.   §§ 404.1520a(d)(3) and 416.920a(d)(3) (2012).  The ALJ incorporates the findings derived from the analysis in the ALJ's decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2) (2012).

The ALJ held that Claimant's mental impairments, considered singly and in combination, do not meet or medically equal Listings 12.04 and 12.06 requirements (Tr. at 18). *See*, 20 C.F.R. 404 Subpart P, Appendix 1.  To demonstrate a mental impairment under the Listings, Claimant's mental impairments must result in at least two of the following:

- Marked difficulties in maintaining social functioning;
- Marked restriction in activities of daily living;
- Marked difficulties in maintaining concentration, persistence or pace; or
- Repeated episodes of decompensation, each of extended duration.

A marked limitation means more than moderate but less than extreme.  Based on Claimant's Function Report dated July 7, 2006, the ALJ found that evidence of Claimant's

reporting to fixing her husband's coffee, cleaning her house for three to four hours, cooking meals, doing dishes and doing laundry did not satisfy Listing requirements to demonstrate marked limitation in activities of daily living. The Claimant reported to going to the grocery store once or twice a month and spending two to three hours when she went. The ALJ found that Claimant had no difficulties in social functioning. With regard to concentration, persistence or pace, Claimant has moderate difficulties. Claimant reported that she pays the bills and handles the household accounts. However, on Claimant's Function Report dated July 7, 2006, Claimant reported that she had to keep her medicine out or she would forget to take it (Tr. at 243). As for episodes of decompensation, Claimant has experienced no episodes of decompensation. The ALJ found that evidence did not satisfy Listing requirements to demonstrate a mental impairment (Tr. at 119).

The ALJ found insufficient evidence that Claimant demonstrated a "medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or physo-social support and one of the following:"

1.  Repeated episodes of decompensation, each of extended duration; or
2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3.  Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

The Claimant demonstrated no episodes of decompensation. Claimant presented no documentation before the ALJ to indicate Claimant meets any of the above listed requirements.

Treating Physician

Claimant asserted that the ALJ erred in rejecting the opinion of Claimant's treating physician and finding that Claimant's medically determinable impairments could reasonably be

expected to cause the alleged symptoms. However, Claimant's statements concerning the intensity, persistence and limiting effects of her non-exertional impairments is not supported by substantial evidence.  Claimant assets that her pain is so great that all she can do some days is sit or lay all day long despite taking her prescribed Lortab 10mg.  The ALJ found this assertion to appear extreme as Claimant also reported that she was able to clean the house, attend doctor's appointments and go grocery shopping (Tr. at 123).

Gregory A. Elkins, M.D., completed a welfare form on Claimant's behalf on March 17, 2005, stating it was "[d]oubtful she will ever return to work" (Tr. at 527).  Anita T. Dawson, D.O., addressed a letter dated March 2, 2005, "To Whom It May Concern," stating that due to Claimant's neck and back pain as a result of a bulging disc in her neck and degenerative disc disease in her back, Claimant "is unable to work in any gainful employment" (Tr. at 586).  An MRI taken per the request of Dr. Dawson in July 2005 concluded "showing low grade degenerative disc desiccation (Tr. at 322).  An MRI without contrast taken per the request of Dr. Dawson on September 3, 2005 concluded showing "Stable bulging of the C5-6 disc. No evidence of Neural Impingement" (Tr. at 320).  An MRI taken with contrast taken per the request of Dr. Dawson on September 3, 2005, concluded with negative findings (Tr. at 321).  Dr. Elkins completed another welfare form on Claimant's behalf on July 17, 2006, reiterating that it was "[d]outbtful she will ever return to work" (Tr. at 325).  On November 17, 2009, Dr. Dawson wrote a letter "To whom it may concern" on Claimant's behalf reiterating that due to Claimant's neck and back pain she "is unable to work in any gainful employment" (Tr. at 587).

Consultant Jules J. Barefoot, M.D., conducted a Consultative Examination on Claimant on August 16, 2006.  In reporting on Claimant's physical examination, Dr. Barefoot reported Claimant had full range of motion in the cervical and lumbar spines, both shoulders, elbows,

wrist, hips, knees and ankles (Tr. at 328).  Claimant's lower extremity and upper extremity motor strength was 5 out of 5.  (*Id.*)  Claimant's gate was normal and she ambulated without the use of an assistive device (Tr. at 329).

A Physical Residual Functional Capacity Assessment performed by a state agency physician, Porfirio Pascasio, M.D., on October 29, 2007, found that Claimant could occasionally lift and/or carry up to 50 pounds, frequently lift and/or carry up to 25 pounds, stand and/or walk for a total of about 6 hours in an 8 hour day with normal breaks, sit with normal breaks for a total of about 6 hours in an 8 hour day and push and/or pull without limit (Tr. at 400).  Dr. Pascasio found Claimant to possess no postural limitations, manipulative limitations, visual limitations, communicative limitations and environmental limitations.  Dr. Pascasio reported that "a few allegations are not supported by medical evidence therefore she is only partially credible" (Tr. at 404).

COPD/Emphysema

Stephen Nutter, M.D., performed an Internal Medicine Examination of Claimant on October 4, 2007.  Claimant's chief complaint was that she was "claiming disability due to back pain and shortness of breath" (Tr. at 370). Dr. Nutter reported that Claimant ambulated with a normal gait and did not require an assistive device.  Claimant's straight leg raises were negative. Although Claimant had range of motion abnormalities in the cervical and lumbar regions, there were no sensory abnormalities and Claimant's reflexes were normal (Tr. at 373).  Claimant complained of shortness of breath, but Dr. Nutter noted that Claimant was not short of breath with mild exertion or in the supine position and Claimant's lungs were clear of any wheezes.

Dr. Nutter performed an Internal Medicine Examination of Claimant on June 12, 2008. Claimant reported difficulty breathing including coughing and wheezing (Tr. at 425).  On

physical examination, Claimant's breath sounds were a little diminished but there were no wheezes.  Claimant reported on April 18, 2011, that she has smoked since the age of 15 and stated that she had no desire to quit (Tr. at 36).   Throughout Claimant's medical reports and treatment notes entered into evidence, Claimant reported to smoking from ½ a pack of cigarettes to three packs a day.

The ALJ considered the opinions as to Claimant's disability and gave little weight to Dr. Dawson and Dr. Elkins' opinions.  The ALJ held that their opinions were based upon Claimant's subjective complains and are inconsistent with the overall medical record (Tr. at 124).  The ALJ considered all evidence presented before him, including Claimant's welfare benefit forms completed by her treating physicians, however, the ALJ is not bound by a finding by a non-governmental agency or any other governmental agency determination.  See C.F.R. § 404.1504 ("a determination made by another agency that you are disabled or blind is not binding on us.")

Credibility Determination

Substantial evidence supports the ALJ's finding that Claimant's alleged severity of symptoms was not credible. The ALJ held Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment (Tr. at 123).  The ALJ stated:

> In determining the claimant's residual functional capacity, I have considered and made reductions based upon the claimant's demeanor as a witness.  The undersigned was able to observe the claimant while she testified, her demeanor, the way she answered the questions and all of the other factors that go into assessing a witness' credibility.   Considering these factors, I found her credibility as a witness to be fair to poor and her demeanor during the hearing consistent with the limitations established in her residual functional capacity (Tr. at 123).

The ALJ further stated that he found Claimant's testimony to be exaggerated and not very credible.[7]

It is well-settled that a claimant's allegations alone will not establish that she is disabled. *See*, 20 C.F.R. § 404.1529 and *Craig v. Chater*, 76 F.3d 585, 594-595 (4th Cir. 1996). While the ALJ must seriously consider a claimant's subjective complaints, it is within the ALJ's discretion to weigh such complaints against the evidence and to reject them. *See*, 20 C.F.R. § 404.1529 and *Craig*, 76 F.3d at 595. As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations. *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

Vocational Expert's Testimony

At the hearing held on May 21, 2010, the ALJ asked Vocational Expert Donald J. Wolwine if a hypothetical individual had the same age, education and work experience as Claimant and has the RFC to perform work at a light exertion level with the same non-exertional limitations stated before, could perform jobs in the national and regional economy. The ALJ added the limitations of moderate limitation in the ability to understand, remember and carry out detailed instructions and decisions and to respond appropriately to usual work situations and to changes in a routine work setting, mild limitation in the ability to understand, remember, carry out and make judgments in simple instructions and to interact appropriately with the public, supervisors and coworkers (Tr. at 663). Vocational Expert Wolwine testified that the hypothetical individual with those combined physical and psychological limitations could

---

[7] An example of Claimant's inconsistent statements that undermine her credibility is her denial of "any IV or recreational drug use" during preliminary physician's reports except during a hospital visit on September 7, 2010, when Claimant's Social History reported "She does use illegal drugs, but does not specify which ones" (Tr. at 19).

perform light exertional jobs such as a product inspectors, product weighers and product sorters (Tr. at 665). Vocational Expert Wolwine further testified that said hypothetical individual could perform sedentary jobs such as product assemblers, package machine tenders and product inspectors (Tr. at 665).  Pursuant to SSR 00-4[8], the Vocational Expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

The ALJ's decision was issued on July 15, 2010.  The ALJ found that Claimant's impairment does not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix.  Substantial evidence supports the determination of the ALJ.  Contrary to Claimant's assertions that the ALJ failed to consider her impairments in combination, the ALJ's decision reflects an adequate consideration of her impairments.  The ALJ fully complied with his duty in keeping with 20 C.F.R. § 404.1523 (2012).  The ALJ found that Claimant has the residual functional capacity to perform light work as defined in 20 C.F.R.§§ 404.1567(b) and 416.967(b).  (*Id.*)  The ALJ denied Claimant's applications for DIB and SSI under the Social Security Act.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, Claimant's Brief in Support of Judgment on the Pleadings is DENIED, Defendant's Brief in Support of Defendant's Decision is GRANTED, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

**Enter:  September 30, 2013.**

Dwane L. Tinsley
United States Magistrate Judge

---

[8] Social Security Ruling 00-4p:  Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.